United States District Court
Southern District of Texas
**ENTERED**
March 27, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FREDERICK JEFFREY, | § | |
|     Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:23-CV-00069 |
| | § | |
| CITY OF HOUSTON, *et al.*, | § | |
|     Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This action arises from the wrongful arrest and conviction of Plaintiff Frederick Jeffrey ("Jeffrey") as the result of false testimony and evidence submitted by a City of Houston Police Department officer. Pending before the Court is a Motion to Dismiss Jeffrey's First Amended Complaint ("Complaint") under Federal Rule of Civil Procedure 12(b)(6) filed by Defendant City of Houston ("the City"). (Dkts. 5, 7). After reviewing the pleadings and applicable law, the Court **GRANTS** the City's motion and Jeffrey's claims are **DISMISSED WITHOUT PREJUDICE**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

Gerald Goines ("Goines") is a former officer of the Houston Police Department ("HPD"). Goines was assigned to Squad 15—a narcotics taskforce in HPD's South

---

[1] The relevant facts are drawn from the Complaint and the public record from Jeffrey's post-conviction relief proceedings referenced in the Complaint. *See Ex parte Jeffrey*, No. WR-92,544-01, 2022 WL 4088689 (Tex. Crim. App. 2022); *Jeffrey v. State*, No. 01-18-00320-CR, 2019 WL 758323 (Tex. App.—Houston [1st Dist.] 2019, pet. refused).

Narcotics Division. Goines supervised other officers on Squad 15. While serving on this taskforce, Goines submitted an affidavit to a magistrate judge to establish probable cause for the issuance of a warrant to search a specific residence. Goines swore under oath that he had sent a confidential informant to purchase narcotics from the residence, and the informant returned with 1.2 grams of cocaine.

On October 24, 2016, Goines and other members of Squad 15 executed a search warrant at 2811 Nettleton Street—Jeffrey's residence. This resulted in Jeffery's arrest and Jeffery being charged with possession of a controlled substance, including methamphetamine. Jeffrey, who suffers from extreme mental health disabilities, was convicted of this crime and received a 25-year sentence in the Texas Department of Corrections.[2]

Jeffrey availed himself of the appellate process and filed an application for a writ of habeas corpus seeking relief from his conviction. While the writ was pending, the informant, who Goines testified he relied on to get the search warrant for Jeffrey's home, admitted to the Harris County District Attorney's Office that she never purchased any narcotics from Jeffrey. As it turns out, "there was no informant that purchased any narcotics from Frederick Jeffrey" and the warrant was "based on a false affidavit" that Goines provided to the magistrate judge.

---

[2] Nearly two and a half years after Jeffrey's arrest, Goines and Squad 15 executed a no-knock warrant on a residence at 7815 Harding Street that resulted in deaths of two occupants in the home and five HPD officers being injured.

After serving five years in state prison, Jeffrey appeared before the Honorable Danilo Lacayo of the 182nd Judicial District Court of Harris County, Texas in connection with his exoneration from the underlying drug conviction. The attorney for the State of Texas informed Judge Lacayo of the extent of Officer Goines' alleged misconduct, which spanned many years and many convictions beyond Jeffrey's. According to the State, the District Attorney's office identified 162 convictions, not including Jeffrey's, that necessitated post-conviction relief. Of those, Officer Goines was the sole witness to the pertinent transaction in 71 cases; and he was the affiant in the other 91 criminal cases. The Texas Court of Criminal Appeals granted Jeffrey's writ and set aside the conviction. Jeffrey was the third person to be deemed "actually innocent" after the discovery of Goines's alleged unlawful conduct.

After being released from prison, Jeffrey filed this action against the City and Goines. In this action Jeffery asserts claims against the City under 42 U.S.C. § 1983 for violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution. Jeffery alleges that the City violated his constitutional rights by (1) allowing Goines to file a false probable cause affidavit and other false evidence with a magistrate judge and (2) failing to adequately train Goines. (Dkt. 5).  He alleges that this conduct resulted in his wrongful arrest and conviction. Jeffrey also asserts claims against the City under the American with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act of 1973 ("§ 504") alleging that it unlawfully discriminated against him by failing to

accommodate his mental disability during his arrest and detention. The City then filed the pending motion to dismiss this action against it which the Court considers below.

## II.    LEGAL STANDARDS

### A.  Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Section 1983 claims must satisfy the current Federal Rule of Civil Procedure 8(a) standard and state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570; *see also Speck v. Wiginton*, 606 F. App'x 733, 735-36 (5th Cir. 2015) (per curiam) ("Speck first contends that the district court applied a heightened pleading standard for civil rights cases contrary to *Leatherman v. Tarrant Cnty.*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). But the district court correctly stated that the proper standard was Rule 8 as interpreted by *Twombly* ... and *Iqbal*....").

In deciding a Rule 12(b)(6) motion, a court may not look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citation omitted).  Accordingly, the Court does not weigh any evidence and only considers the factual allegations in Plaintiffs' complaints and the attachments central to the allegations.  *Id*.

### B.  Municipal Liability under 42 U.S.C. § 1983

"To state a claim under § 1983, a plaintiff must allege facts showing that a person, acting under color of state law, deprived the plaintiff of a right, privilege or immunity secured by the United States Constitution or the laws of the United States." *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 686 (5th Cir. 2010). The theory of respondeat superior cannot impute liability to a municipality for the unconstitutional actions of its employees. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  Instead, a plaintiff must establish municipal liability under § 1983 for the violation of constitutional rights through the framework announced by the United States Supreme Court in *Monell*. "[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell v. Dep't. of Social Services*, 436 U.S. at 694). A plaintiff's failure to establish any one of these three elements is fatal to a claim brought under § 1983 against a municipality for the conduct of its employees. *See id.*

The element of the existence of a custom or policy can be demonstrated by a policy statement formally announced by an official policymaker. *Zarnow v. City of Wichita Falls,*

*Tex.*, 614 F.3d 161, 168 (5th Cir. 2010). Alternatively, a custom or policy can be demonstrated through a "'persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Id.* at 168-69 (quoting *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir. 1984)); *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 396 (5th Cir. 2017) ("A pattern requires similarity, specificity, and sufficiently numerous prior incidents."). And "specific facts" are required. *Balle v. Nueces Cnty., Tex.*, 952 F.3d 552, 559 (5th Cir. 2017) (internal citation omitted). Importantly, "[i]t is not enough that an illegal custom exist; municipal policymakers, who are the persons capable of subjecting a municipality to liability, must be chargeable with awareness of the custom." *Milam v. City of San Antonio*, 113 F. App'x 622, 626 n.3 (5th Cir. 2004); *Thomas v. City of Galveston, Tx.*, 800 F. Supp. 2d 826, 2011 WL 3290317, at \*14 (S.D. Tex. 2011). In other words, to be held liable under § 1983 a city must have knowledge of the alleged custom or policy that is violating the constitutional rights of its citizens. *Webster*, 735 F.2d at 842.

## III.   ANALYSIS

### A. Jeffrey fails to state a § 1983 claim against the City for the filing of false affidavits and testimony by Goines.

Jeffrey fails to allege sufficient facts establishing an official policy promulgated or ratified by the City or its designated policymaker, the Chief of Police, that was the moving force behind the filing of the false affidavits and testimony by Goines and Jeffery's

wrongful conviction and imprisonment. Jeffery's failure to do so is fatal to this § 1983 claim. *See Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003); *see also Monell*, 436 U.S. at 694.

In this case Jeffery does not allege the existence of a written policy by the City or the Chief of Police that led to the violation of his constitutional rights. Although Jeffery alleges the existence of a custom or practice that did so, his factual allegations regarding the custom or practice are internally inconsistent and contradictory. On the one hand Jeffery alleges that the City had a custom or practice of allowing its officers to file false affidavits and testimony with magistrate judges. As the Complaint alleges:

> "[T]he City of Houston, Texas either implements or allows its subordinate employees to implement policies governing the procedures and practices of its narcotics division of the police department that allows its law enforcement officers to fabricate information or submit false information to an intermediary[.] This information is falsified for the purpose of targeting citizens that are allegedly suspected of criminal conduct and which consistently results in the violation of Plaintiff's right to due process of law and the right to due process of law by over a hundred other persons as well."

(Dkt. 5 at ¶ 15). Jeffery alleges that "Goines and his squad" arrested over 160 people over a period of years "strictly on the basis of either his false testimony or falsified affidavits." (Dkt. 5 at ¶ 15); (Dkt. 5-4 at p. 6). However, on the other hand, Jeffrey also alleges that HPD has a policy for its officers to file only truthful affidavits and testimony, implying that the misconduct of Goines and his squad was in direct contravention to the intentions of both the City and the Chief of Police. Jeffery asserts that "[i]t is the policy of the Houston Police Department, through its narcotics divisions, to investigate illegal narcotics activities

within their jurisdiction and to obtain with a *valid*, sworn affidavit in support of probable cause…" search and arrest warrants. (Dkt. 9 at p. 5) (emphasis added).

Even assuming the existence of an unlawful custom or policy, Jeffery does not allege sufficient facts that would establish how the City or the Chief of Police would have knowledge of it. While the Complaint alleges 162 instances of the filing of false affidavits or testimony, in this case such allegations do not establish that this conduct was such a widespread practice that knowledge of these incidents can be chargeable to the City. *See Milam*, 113 F. App'x at 626 n.3.  That is because here, the factual allegations concern the conduct of *just one officer in one squad in a department of thousands of officers: Goines*. The Complaint does not provide any factual allegations regarding the conduct of the other members of his squad or any of their fellow officers suggesting that the filing of false affidavits and testimony is a widespread practice in the police department or a pattern of misconduct.

The Complaint also does not contain any other factual allegations establishing how the City or the Chief of Police would have knowledge of the actions of one alleged rogue police officer in a department of thousands of employees. For example, there are no factual assertions establishing that Goines's alleged actions were out in the open or done in the presence of or with the assistance of the Chief of Police or other City policymaker. Likewise, there are no factual allegations that the number of false affidavits filed by Goines constitute such a significant percentage of the total number of affidavits provided to magistrates by HPD officers during the period at issue that the Chief of Police would have

had knowledge of his conduct. As noted above, Jeffery claims that HPD has a policy that specifically requires its officers to seek valid sworn affidavits in support of probable cause.

There are also no factual allegations establishing that either the Chief of Police or the City were notified of any concerns with Goines's probable cause affidavits and testimony prior to Jeffery's arrest and conviction or, for that matter, knew that Goines even existed. As the Complaint alleges, "[i]t was only after an application for writ of habeas corpus was filed on behalf of Plaintiff in this case that the Confidential Informant … admitted to the Harris County District Attorney's Office that she never purchased any narcotics from [Jeffery]…." As Goines had represented to the magistrate judge. (Dkt. 5 at ¶ 18).

Under these circumstances, Jeffery's conclusory allegations, such as the pattern of unconstitutional conduct was "allowed to thrive for years through deliberate indifference by supervisors up the chain of command all the way to the Chief's office and above," are insufficient to establish knowledge and acceptance of Goines's alleged unconstitutional conduct by either the City or the Chief of Police. (Dkt. 5 at ¶ 5). Accordingly, Jeffery's allegations are insufficient to state this § 1983 claim against the City and the claim should be dismissed.

### B. Jeffrey fails to state a claim under § 1983 against the City for failure to train.

The City also moves to dismiss Jeffery's claims against it under § 1983 for violating his constitutional rights by "failure to act," i.e., failure to train or supervise. (Dkt. 7 at pp.

13-16). Jeffrey's Response to Houston's Motion to Dismiss does not challenge dismissal of this claim. A review of the Complaint's allegations regarding this claim reveals why: Jeffrey's failure to train or supervise claim does not comply with the mandates of *Iqbal* and *Twombly*. To maintain this failure to train claim under § 1983, Jeffrey must show "1) the city failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Peña v. City of Rio Grande* City, 879 F.3d 613, 623 (cleaned up) (citing *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001)). "Failure to train cannot be alleged by the simple assertion that the occurrence of the incident proves the need for additional or different training." *Garcia v. Harris Cnty.*, No. CV H-22-198, 2022 WL 2230469, at *3 (S.D. Tex. June 2, 2022), *report and recommendation adopted*, No. CV H-22-198, 2022 WL 2222972 (S.D. Tex. June 21, 2022).

Jeffery's Complaint does not sufficiently allege that the City failed to train or supervise Goines or any of its officers. Nor has Jeffrey established the connection between the City's training and supervision and his wrongful conviction. Moreover, Jeffrey does not allege facts showing that the City was deliberately indifferent to his injury. This is because he fails to even identify the subject of the training and explain why training was necessary. Nor has he alleged that any municipal policymaker is linked to the training. Accordingly, Jeffery's allegations are insufficient to state this § 1983 claim for failure to

train against the City and the claim should be dismissed.  *See Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005); *Bennett v. City of Slidell*, 78 F.2d 762, 767 (5th Cir. 1984); *May v. City of Arlington, Tex.*, 398 F. Supp. 3d 68, 79–80 (N.D. Tex. 2019), *supplemented*, 3:16-CV-1674-L, 2019 WL 1429662 (N.D. Tex. Mar. 28, 2019) (granting 12(b)(6) in part because of conclusory allegations that "the City failed to train and supervise its police officers, overlooked and covered up officer misconduct, failed to discipline officers for their misconduct, and turned a 'blind eye' to constitutional violations of its police officers").

### C. Jeffrey's ADA and § 504 claims are barred by the applicable Statute of Limitations

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Congress intended that Title II "work in the same manner as Section 504," and jurisprudence interpreting either statute is generally applicable to both.  *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000) (citations omitted). Thus, the Court analyzes Jeffrey's ADA and § 504 claims simultaneously as they rise and fall together.  *Id*. at 801.

The City argues that the ADA and § 504 claims should be dismissed because they are time barred by "either a two- or four-year limitations period." (Dkt. 7 at ¶ 29).   In response, Jeffrey argues that the limitations period should be "lengthened," or the Court

should apply equitable tolling. (Dkt. 9 at ¶ 4). The Court finds Jeffery's arguments unpersuasive.

Under the ADA and § 504, a two-year statute of limitations governs. *Frame v. City of Arlington*, 657 F.3d 215, 237 (5th Cir. 2011). "Absent tolling, the limitations period runs from the moment a plaintiff's claim 'accrues,'" and while the limitations period is borrowed from state law—here, Texas—"the particular accrual date of a federal cause of action is a matter of federal law." *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 762 (5th Cir. 2015) (quoting *Frame*, 657 F.3d at 238). "In applying the forum state's statute of limitations, the federal court should also give effect to any applicable tolling provisions." *Burns v. Harris Cnty. Bail Bond Bd.*, 139 F.3d 513, 519 (5th Cir. 1998); *see Board of Regents of the Univ. of the State of N.Y. v. Tomanio,* 446 U.S. 478, 483–86, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980).

The Court finds no basis under Texas law to toll the applicable limitations period in this case. Under well-established Texas law, the statute of limitations was not tolled while Jeffery was in prison. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.001. Imprisonment was deleted from the definition of legal disability in 1987. *See* Act" of June 19, 1987, 70th Leg., R.S., ch. 1049, § 56, 1987 Tex. Gen. Laws 3517, 3539. Furthermore, Jeffery does not plead any facts establishing that he had a legal disability such as "an unsound mind" that prevented him from timely bringing this action. *See* TEX. CIV. PRAC. & REM. CODE § 16.001(a). "[W]hen a person is of unsound mind at the time his cause of action accrues, the applicable statute of limitations will be tolled until the disability

is removed." *Helton v. Clements,* 832 F.2d 332, 336 (5th Cir. 1987). "Generally, the term 'unsound mind' refers to a legal disability, although it is not limited to persons who are adjudicated incompetent." *Hargraves v. Armco Foods, Inc.,* 894 S.W.2d 546, 547 (Tex. App.—Austin 1995, no writ); *see Casu v. CBI Na–Con, Inc.,* 881 S.W.2d 32, 34 (Tex. App.— [14th Dist.] 1994, no writ). "[I]n general, 'persons of unsound mind' and 'insane persons' are synonymous." *Nelson v. Reddy,* 898 F. Supp. 409, 410 (N.D. Tex. 1995) (quoting *Hargraves,* 894 S.W.2d at 547). As the Fifth Circuit has explained, "[g]enerally, the term, as used in this setting, has been interpreted to mean that such a person is unable to manage his affairs or to understand his legal rights or liabilities." *Helton,* 832 F.2d at 336; *see Grace v. Colorito,* 4 S.W.3d 765, 769 (Tex. App.—Austin 1999, pet. denied). "[P]roof of facts suspending operation of a statute of limitations is the burden of the party pleading suspension." *Weaver v. Witt,* 561 S.W.2d 792, 794 n. 2 (Tex.1977); *see Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 518 (Tex.1988); *Willis v. Maverick,* 760 S.W.2d 642, 647 (Tex.1988).

Jeffrey does not plead facts establishing a lack of mental capacity, including how long the impairment has affected him or what the attendant limitations are, to permit the Court to adequately assess whether tolling is appropriate. Considering this failure, the Court concludes that tolling is inappropriate. The date that Jeffrey claims he was not accommodated as required by the ADA and § 504 was the day of his arrest on October 24, 2016. Since this lawsuit was filed on January 10, 2023, well over two years later, the Court finds that the ADA and § 504 claims are time barred and should be dismissed.

13 / 14

## IV.    CONCLUSION

Under the circumstances of this case, the Court finds that permitting Jeffery to amend his complaint again following dismissal would be futile. After Jeffery filed his initial complaint in this action, the City filed a written request for a pre-motion conference with the Court regarding the filing of a motion to dismiss the complaint. Pursuant to the Court's procedures, the City's three-page letter set out the complaint's alleged deficiencies with respect to Jeffrey's § 1983 claims that would be the subject of the motion. The Court then gave Jeffery the opportunity to file an amended complaint specifically addressing the alleged deficiencies before the City filed its motion. Jeffery took this opportunity and filed his first amended complaint. The City then filed the pending motion to dismiss that complaint. Accordingly, the Court has no reason to believe that Jeffery has any additional facts he could plead to establish the validity of his §1983 claims against the City. Likewise, since Jeffrey's ADA and § 504 claims are barred by the two-year statute of limitations, the Court finds that any amendments to the factual allegations regarding these claims would also be futile.

It is hereby **ORDERED** that the City of Houston's Motion to Dismiss (Dkt. 7) is **GRANTED**. It is further **ORDERED** that Frederick Jeffrey's claims against the City of Houston are **DISMISSED WITHOUT PREJUDICE**.

SIGNED at Houston, Texas, on March 27, 2024.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE